**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Natasha Hiller,<br><br>          Plaintiff,<br><br>v.<br><br>Money Source Incorporated,<br><br>          Defendant. | No. CV-23-00235-PHX-JJT<br><br>**ORDER** |

At issue is Plaintiff Natasha Hiller's[1] Motion to Certify Class (Doc. 51, Motion), to which Defendant The Money Source Incorporated filed a Response (Doc. 65, Response) and Plaintiff filed a Reply (Doc. 66, Reply). The Court finds this matter appropriate for resolution without oral argument. *See* LRCiv 7.2(f). For the reasons that follow, the Court grants Plaintiff's Motion to Certify Class.

## I.    Background

The Telephone Consumer Protection Act (TCPA) provides in relevant part that:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . unless such call is made solely to collect a debt owed to or guaranteed by the United States.

---

[1] Plaintiff's Motion indicates that her legal name has changed to Natasha Kantor. (Doc. 51 at 1.)

47 U.S.C. § 227(b)(1)(A)(iii). In this lawsuit, Plaintiff alleges that Defendant called her and numerous other similarly situated individuals in violation of the TCPA.

Unless otherwise noted, the following facts are undisputed for purposes of the instant Motion. Plaintiff and all other putative class members entered into relations with Defendant that permitted Defendant to place certain kinds of debt collection calls to their cell phones. After receiving such calls, the putative class members each verbally informed Defendant that they wished to receive no further calls on their cell phones. The extent to which these oral statements constitute legally operative revocations of consent is one of the core issues that the parties dispute. Defendant's employees created written notes of the putative class members' verbal requests to be placed on a do-not-call list. However, according to Plaintiff, Defendant's policy was to disregard such oral requests and to instead only honor written requests. Plaintiff contends that this policy is illegal under the TCPA. Each putative class member continued to receive calls within the scope of the TCPA from Defendant after orally requesting to be exempted from such calls.

Plaintiff filed the instant lawsuit on behalf of herself and other similarly situated individuals. The sole claim in her complaint is a claim under § 227(b)(1)(A)(iii) of the TCPA, quoted above. (*See* Doc. 1 at 9.) Plaintiff seeks three forms of relief thereunder: (1) an order enjoining further violations, *see* § 227(b)(3)(A); (2) actual damages or $500 in statutory damages for each violation, whichever is greater, *see* § 227(b)(3)(B); and (3) treble damages for willful or knowing violations, *see* § 227(b)(3). (*See* Doc. 1 at 10.)

In the instant Motion, Plaintiff requests that the Court certify a class consisting of:

> All persons throughout the United States or its territories (1) to whom Defendant placed, or caused to be placed, a call, (2) directed to a number assigned to a cellular telephone service, (3) in connection with which Defendant used an artificial or prerecorded voice, (4) after the called party requested that Defendant stop placing telephone calls using an artificial or prerecorded voice to their cellular telephone, as recorded in Defendant's business records, (5) from four years prior to the filing of this Complaint through the date of class certification.

. . .

- 2 -

(Motion at 1–2.) The characteristic of Plaintiff's proposed class that is most central to the instant dispute is the fourth criterion, which requires that class members received the specified calls after submitting an oral revocation of consent "as recorded in Defendant's business records." The parties have already conducted some discovery, and Plaintiff has identified a proposed class of ninety-two cell-phone numbers that Plaintiff's expert constructed by (1) using a key-word search of Defendant's records to identify those accounts for which Defendant's employees recorded a do-not-call request, (2) determining which of those accounts received an automated, artificial, or prerecorded call after the submission of the do-not-call request, and (3) ascertaining which of those accounts are associated with cell-phone numbers.

## II.    Legal Standard

Federal Rule of Civil Procedure 23(a) provides that a class action—that is, an action in which one or more members of a class sue on behalf of all members of the class—may proceed only if four prerequisites are met:

1. Numerosity: "the class is so numerous that joinder of all members is impracticable;"

2. Commonality: "there are questions of law or fact common to the class;"

3. Typicality: "the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and

4. Adequacy of Representation: "the representative parties will fairly and adequately protect the interests of the class."

In addition, under Rule 23(b), a court may only certify a class action if there is at least one of the following:

1. Risk of Inconsistency: the prosecution of separate actions by individual class members would create a risk of inconsistent adjudications or adjudications that would be dispositive of non-party class member interests;

2. Appropriate Class-Wide Injunctive Relief: injunctive or declaratory relief is appropriate respecting the class as a whole because the conduct of the opposing party applies generally to the class; or

1       3. Predominance and Superiority: "the court finds that the questions of law or fact
2           common to class members predominate over any questions affecting only individual
3           members, and that a class action is superior to other available methods for fairly and
4           efficiently adjudicating the controversy."

5 Fed. R. Civ. P. 23(a)–(b).

6       "Rule 23 does not set forth a mere pleading standard. A party seeking class

7 certification must affirmatively demonstrate his compliance with the Rule—that is, he must

8 be prepared to prove that there are *in fact* sufficiently numerous parties, common questions

9 of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis

10 in original). Thus, "sometimes it may be necessary for the court to probe behind the

11 pleadings before coming to rest on the certification question." *Id.* (quoting *Gen. Tel. Co. of

12 *the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). Class certification "is proper only if 'the trial

13 court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been

14 satisfied,'" which will frequently "entail some overlap with the merits of the plaintiff's

15 underlying claim." *Id.* at 350–51 (quoting *Falcon*, 457 U.S. at 161). "The same analytical

16 principles govern Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). "If

17 anything, Rule 23(b)(3)'s predominance criterion is even more demanding than

18 Rule 23(a)." *Id.*

19 **III. Discussion**

20       Plaintiff seeks to proceed only under Rule 23(b)(3), which requires that a proposed

21 class action satisfy the elements of predominance and superiority. The provisions of

22 Rule 23(b)(1)–(2), addressing the risk of inconsistency and the appropriateness of class-

23 wide injunctive relief, are thus irrelevant here. Defendant contends that Plaintiff's Motion

24 fails to satisfy the predominance and superiority criteria under Rule 23(b), as well as the

25 numerosity and commonality criteria under Rule 23(a). Defendant does not contest the

26 Rule 23(a) elements of typicality or adequacy of representation. All of Defendant's

27 arguments in this matter are derivative of its primary argument that the proposed class

28 action fails to meet the condition of predominance. Therefore, although courts normally

address Rule 23(a) before turning to Rule 23(b), the Court will proceed in inverse order here and will instead analyze Defendant's arguments in the order presented in its Response.

### A. Predominance

At the outset, the Court thanks the parties for their excellent briefing in this matter. Both parties have adduced a great volume of on-point authority supporting their respective positions. Given the number of cases cited by the parties, the Court cannot herein address each citation individually, though it has thoroughly reviewed the briefs as well as the sources relied upon therein.

The Supreme Court has provided the following description of the standard that lower courts are to use in assessing predominance.

> Federal Rule of Civil Procedure 23(b)(3) requires that, before a class is certified under that subsection, a district court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members." The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). This calls upon courts to give careful scrutiny to the relation between common and individual questions in a case. An individual question is one where "members of a proposed class will need to present evidence that varies from member to member," while a common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012) (internal quotation marks omitted). The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.*, § 4:49, at 195–196. When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005) (footnotes omitted).

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453–54 (2016). Expanding upon that holding, the Ninth Circuit has explained that "[p]redominance is not, however, a matter of

nose-counting." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). "Rather, more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Id.* In other words, "[t]o determine whether a class satisfies the requirement, a court pragmatically compares the quality and import of common questions to that of individual questions." *Jabbari v. Farmer*, 965 F.3d 1001, 1005 (9th Cir. 2020).

Defendant identifies two issues, one of fact and one of law, that it contends affect each class member individually and predominate over questions that are common to all class members. Those two issues are (1) whether each individual class member revoked his or her consent to receive calls and (2) which body of Circuit law governs which calls. (*See* Response at 1.) The Court examines each in turn.

### 1.    Revocation of Consent

As noted above, a call does not violate the TCPA if it is "made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). "[P]rior express consent is a complete defense to [a] TCPA claim." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017). "Express consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." *Id.* However, both here and in *Van Patten*, the issue of consent is more muddled than a pure affirmative defense regarding which the defendant would bear the burden, as both here and in *Van Patten* the issue is not whether the plaintiff provided express consent but instead whether the plaintiff revoked that consent. *See id.* at 1047–48. The Court agrees with Defendant that, in hinging this case upon verbal revocations of consent to be called, Plaintiff has conceded that she and the proposed members of her class previously granted such consent. (*See* Response at 2–3.) Although defendants ordinarily bear the burden of establishing consent under the TCPA, plaintiffs bear the burden of establishing revocation of consent. *See Saulsberry v. Meridian Fin. Servs., Inc.*, No. CV 14-6256 JGB (JPRx),

2016 WL 3456939, at *11 (C.D. Cal. Apr. 14, 2016). "Revocation of consent must be clearly made and express a desire not to be called or texted." *Van Patten*, 847 F.3d at 1038.

Defendant contends that, in order to prevail, Plaintiff must show that the question of whether each putative class member revoked his or her consent is susceptible of common proof. (*See* Response at 1 ("To prevail on her motion, Plaintiff must prove, among other things, there is common evidence to show how and when each class member revoked prior consent and whether that revocation was clear and ambiguous [sic].")); Response at 8 ("Consequently, in order to satisfy predominance, Plaintiff must demonstrate [Defendant's] prior consent defenses for all proposed members are 'susceptible to common proof.'" (citation omitted)).) That is incorrect.

Rule 23(b)(3) plainly does not require that each and every issue in a class action depend upon questions of law and fact common to the class. Indeed, the opposite is true. By requiring that "questions of law or fact common to class members predominate over any questions affecting only individual members," Rule 23(b)(3) presupposes that class actions may contain issues that are primarily individual in nature. The existence of individual issues is not fatal to a class action under Rule 23(b)(3), so long as those individual issues do not dominate the case. Therefore, the extent to which the question of consent revocation requires individualized consideration is, *per se* and in a vacuum, nondeterminative of the propriety of a class action. What matters is whether the individual nature of the consent-revocation inquiry is, on balance, predominant. That conclusion is consistent not only with the plain language of Rule 23(b)(3), but also with the caselaw interpreting it. "Defenses that must be litigated on an individual basis can defeat class certification. Yet 'when one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as some affirmative defenses peculiar to some individual class members.'" *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018) (quoting *Tyson Foods*, 577 U.S. at 453).

The Court agrees with Defendant that the question of consent revocation is a primarily individual issue, but the Court rejects Defendant's contention that the consent-revocation inquiry predominates over the issues in this case that are common to all class members. Defendant's core argument is that, because the natural-language notes of its employees are at times unclear or ambiguous, the determination of whether each putative class member revoked his or her consent will be so complicated as to predominate over all common issues. The Court disagrees.

The Ninth Circuit has noted that class certification is "not an exact science." *Jabbari*, 965 F.3d at 1005. It is impossible to know at this juncture precisely which issues will in fact predominate in this litigation. However, based upon a review of the record, the Court foresees that the question of consent revocation will be amenable to a rather simple and straightforward resolution. This conclusion is signified by Plaintiff's definition of her proposed class, which states that the class shall consist of those individuals who revoked consent "as recorded in Defendant's business records." That definition makes clear that Plaintiff expects the issue of consent revocation to be determined largely, if not entirely, based upon a limited set of documents that have already been subject to discovery, namely Defendant's business records. In her Reply, Plaintiff indicates that she continues to view the question of consent revocation as susceptible of a simple method of proof. According to Plaintiff, "[w]hile Defendant could choose to maintain more exacting records, the existing records are sufficient for class certification." (Reply at 3–4 n.5.) The Court finds Plaintiff's evidentiary prediction to be reasonable.

As noted, Plaintiff's position is that she will carry her burden of proof with respect to consent revocation for each member of the class solely by reference to Defendant's business records. However, in the event that a genuine dispute arises between Plaintiff and Defendant regarding the evidentiary sufficiency of a particular call entry, extrinsic evidence may be necessary for the resolution of that dispute. But even then, the extrinsic evidence that Plaintiff will adduce will be limited in both scope and complexity. As Plaintiff avers, "for the handful of particular class members Defendant suggests its agents

did not clearly document the request for no further calls, it can resolve those issues through affidavits and sworn claim forms." (Reply at 5.) That method of resolving questions of consent revocation tracks the method recently employed by the Western District of Kentucky in a case that is analogous to the instant matter. *See Elliot v. Humana Inc.*, No. 3:22-CV-00329-RGJ, 2025 WL 1065755, at \*9–10 (W.D. Ky. Apr. 9, 2025).

In *Elliot*, the court was confronted with an argument that class certification was improper on the grounds that the determination of whether the class members revoked their consent would require an individualized examination of the evidence pertaining to each class member. *Id.* There, as here, the defendant maintained a data archive indicating which of its call recipients had revoked their consent by way of informing the defendant that it had called a wrong number. *Id.* Relying upon caselaw from the several different circuits, including the Ninth Circuit, the *Elliot* court held that "the need to manually review files for class certification is not dispositive because if it were, 'defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their businesses or the manner in which their business records were maintained.'" *Id.* (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 540 (6th Cir. 2012)). The court went on to hold, again citing Ninth Circuit caselaw, that the defendant's "argument that predominance is defeated because questions of consent would require interviewing every potential class member also fails as the Court can use affidavits and sworn claim forms to determine membership." *Id.* There, as here, the defendant's "database and the expert wrong notice reports provide a narrow and well-defined starting point of likely class members that the parties can use to send claim forms and affidavits." *Id.* "Under this framework, class membership determinations would be premised not only on claimants' claim forms and affidavits, but on [the defendant's] own data and wrong number reports, a common and administratively feasible framework for class notice." *Id.*

The Court finds the *Elliot* analysis to be apposite to the case at bar. In the cases cited by Defendant, in which district courts denied class certification in situations analogous to the instant matter, the courts were of the impression that the class-formation process would

involve a range of evidence much broader than the narrow set of evidence that the Court foresees being necessary here. For instance, in one of the cases cited most prominently in Defendant's Response, the proposed class was "[a]ll persons within the United States who received a telephone call from PHEAA between February 2010 and February 2014 on their cellular telephone made through the use of any automatic telephone dialing system or an artificial or prerecorded voice after having requested PHEAA to refrain from further telephonic communications." *Silver v. Pa. Higher Educ. Assistance Agency*, No. 14-CV-00652-PJH, 2020 WL 607054, at *1 (N.D. Cal. Feb. 7, 2020) (emphasis omitted). Notably, the definition of the class in *Silver* did not contain the limitation present here, namely the restrictive indicator that a class member's revocation shall be evident in the defendant's business records. The Northern District of California denied class certification based upon its concern that examining "the totality of the facts and circumstances" of revocation would require "a detailed inquiry into various representations and conduct made by a potential class member and defendant." *Id.*, at *17. This Court in no way impugns the analysis of its sister court. However, on the record in this matter as it currently stands, the Court does not foresee the need to conduct the sort of exacting inspection that formed the basis of the *Silver* court's holding.

Similarly, in another of the cases that Defendant relies heavily upon, the relevant class was defined as "[a]ll persons within the United States who received any debt collection telephone calls from Defendant to said person's cellular telephone made through the use of Defendant's automatic telephone dialing system in 'preview' mode, after such person had revoked their consent to continue receiving such calls, between August 8, 2010 and present." *Saulsberry v. Meridian Fin. Servs., Inc.*, No. CV 14-6256 JGB (JPRx), 2016 WL 3456939, at *4 (C.D. Cal. Apr. 14, 2016). Once again, there is no reference in the *Saulsberry* class definition to the centrality of the defendant's business records. The court in *Saulsberry*, as in *Silver*, denied class certification due to the court's fear that the evidentiary submissions surrounding consent revocation would balloon out of control. *Id.*,

- 10 -

at *11. The Court finds *Saulsberry*, like *Silver*, to be analytically sound but distinguishable on the record.

The Court reiterates the Ninth Circuit's acknowledgement that class certification is not an exact science. The Court's rejection of Defendant's argument is predicated upon representations made by Plaintiff and on the state of the record as it currently exists. It is certainly possible that this case could evolve such that consent revocation does come to predominate over the common issues herein. Should that come to pass, the Court can revisit this question and can consider whether decertification is appropriate. *See Arredondo v. Delano Farms Co.*, 301 F.R.D. 493, 501–02 (E.D. Cal. 2014) (explaining the legal standard that governs the decertification analysis). At present, however, the Court agrees with Plaintiff that the individualized questions of consent revocation will not predominate over the common questions in this action.

The issues that the Court predicts will predominate in this lawsuit are the questions touching upon Defendant's allegedly illegal policy. As noted, Plaintiff requests treble damages, which are only available upon a showing of willful or knowing misconduct. *See* 47 U.S.C. § 227(b)(3). In support of that prayer for relief, Plaintiff alleges that Defendant adopted an illegal policy requiring its employees to dishonor most verbal revocations of consent and instead demand written revocations. (*See* Doc. 1 ¶¶ 4–5, 22–23, 47.) The Court finds these issues—the existence of the allegedly illegal policy and whether that policy satisfies the TCPA's willfulness provision—to be (1) amenable to class-wide proof and (2) likely to predominate over the individual questions in this case. The resolution of these questions will probably involve a wide-ranging and variegated aggregation of evidence and will likely require nuanced determinations by the finder of fact. The Court concludes that the adjudication of Defendant's allegedly illegal policy is common to all class members and renders this matter an appropriate class action.[2]

---

[2] The Court rejects Defendant's ancillary arguments that class certification is improper on the basis that (1) a majority of class members have multiple phone numbers and (2) class members could have re-consented to receiving calls after having previously revoked that consent. (*See* Response at 11–13.) Neither of these arguments is well-developed. Regarding the first argument, the Court perceives no impediment to class adjudication simply because some class members have more than one phone number on

1

2.      **Circuit Split**

2

Defendant's second argument against predominance rests upon its assertion that "a

3

circuit split exists as to whether a party can unilaterally revoke consent." (*See* Response

4

at 16.) Although it is true that there is a circuit split regarding the extent to which a party

5

can unilaterally revoke consent under the TCPA, Defendant fails to demonstrate that this

6

circuit split is relevant here.

7

In *Van Patten*, the Ninth Circuit held that the TCPA permits a party to revoke her

8

consent using any reasonable method, including an oral revocation, so long as the

9

revocation clearly expresses a desire not to be contacted. 847 F.3d at 1047–48. In so

10

holding, the Ninth Circuit relied on a Declaratory Ruling and Order issued by the FCC in

11

July of 2015. *Id.* However, as Defendant explains in its Response, both the Ninth Circuit's

12

opinion in *Van Patten* and the FCC Ruling that it relied upon concerned revocation of

13

consent that was gratuitously granted, not revocation of consent that was granted as part of

14

a binding agreement. *See Carl v. First Nat'l Bank of Omaha*, No. 2:19-CV-00504-GZS,

15

2021 WL 2444162, at *11 (D. Me. June 15, 2021) (noting that *Van Patten* "was not a case

16

where consent to be called was expressly made part of the parties' bargained for exchange"

17

and instead "involve[d] calls placed after a called party who had gratuitously provided

18

consent then revoked consent").

19

The Second Circuit has held that "the TCPA does not permit a party who agrees to

20

be contacted as part of a bargained-for exchange to unilaterally revoke that consent." *Reyes*

21

*v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 56 (2d Cir. 2017). In so holding, the Second

22

Circuit specifically distinguished several cases from other circuits in which "the plaintiffs

23

24

25

26

27

28

file with Defendant. The TCPA regulates calls made to phone numbers, not individuals. *See* 47 U.S.C. § 227(b)(1)(A)(iii). Thus, a number-by-number analysis is already the default mode of TCPA cases. Moreover, the deposition testimony of Plaintiff's expert that Defendant cites indicates that a number-by-number analysis would present no analytical problem. "If the parties agree on any changes that they want to make on that, if they want to do it by the loan number or if they want to do it by the phone number or they want to do it by the—if they want to do it either by the loan number or phone number, that is really an easy change to make. If I was asked to do that, that would be very easy to do. It's not for me to decide how—whether or not a do not call applies to all the phone numbers that have an account or not." (Doc. 65-4 at 36–37.) Regarding the second argument, re-consent, like primary consent, is an affirmative defense that Defendant would bear the burden of proving and that would not ordinarily defeat class certification.

provided such voluntary consent to be contacted by furnishing their telephone numbers to businesses in connection with loan and insurance applications." *Id.* at 57. The Second Circuit thus limited its holding to situations in which consent is "included as an express provision of a contract." *Id.*

*Reyes* has received both rejection and approval from district courts outside the Second Circuit. *Compare, e.g.*, *Ammons v. Ally Fin., Inc.*, 326 F. Supp. 3d 578, 595 (M.D. Tenn. 2018) (noting that "[t]he Court finds the *Reyes* decision to be highly problematic for multiple reasons"), *with, e.g.*, *Carl*, 2021 WL 2444162, at *11 (noting that "the Court is persuaded by the reasoning of *Reyes*"). However, the Court need not explore this circuit split, at least at the present procedural juncture, as the record in this case indicates that the circuit split is irrelevant to the instant matter. Despite the differing treatment that the *Reyes* opinion has received in courts across the country, it is clear that *Reyes* and its progeny only apply where consent has been granted in a mutually binding contract. For instance, the District of Maryland has explained that a grant of consent contained in a credit application is unilaterally revocable unless and until it is incorporated into a contract. *Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674, 683 (D. Md. 2017) ("In any event, it is not clear that the consent clause in the Credit Application could be construed as a bargained-for contract term. Even if it were deemed to be such a term, Ginwright was not contractually bound to it because a close reading of the relevant agreements reveals that the Credit Application was not part of Ginwright's contractual agreement with Exeter."). Other courts have also noted that *Reyes* does not govern situations in which consent has only been granted in a pre-contractual application. *See, e.g.*, *Carl*, 2021 WL 2444162, at *11 (distinguishing cases like *Van Patten* that involved grants of consent contained in business applications from cases like *Reyes* that involved grants of consent contained in bilateral contractual agreements). This dichotomy is unsurprising, as *Reyes* itself expressly notes that a grant of consent contained in a mere "loan [] application" is unilaterally revocable under the TCPA. *See* 861 F.3d at 57.

Here, it appears that the purported class members only ever conferred consent upon Defendant through a loan application. Plaintiff avers that she never granted consent as part of a contractual commitment or bilateral agreement, (Reply at 10, 12 n.11), and Defendant only directs the Court's attention to conferrals of consent contained in loan applications, (Response at 2). Defendant cites to loan applications in which Plaintiff "expressly authorize[d]" Defendant to "use" her phone number for the purpose of, *inter alia*, "process[ing] and underwrit[ing]" her loan and "monitor[ing] the account for this loan for potential delinquencies." (Doc. 65-2 at Bates TMS000399, TMS000295.) However, Defendant does not indicate that Plaintiff ever effectuated a similar grant of consent in a mutually binding contract, nor does Defendant indicate that any such contract incorporated the consent provision of the loan application.

Thus, the circuit split identified by Defendant appears to be of no moment, as not even the Second Circuit would deem consent to be non-revocable on these facts. The Court therefore rejects Defendant's objection to class certification on this basis. If, after further development of the record, it becomes clear that this or any other circuit split might threaten the validity of a continued class action, the Court will at that juncture determine whether to decertify the class, subdivide the class, cull the class, or take any other appropriate action.[3]

## B.    Superiority

Defendant asserts that superiority is absent under Rule 23(b)(3) for the same reasons that predominance is absent. (*See* Response at 18 ("A class action is not superior when

---

[3] Defendant insinuates that *Van Patten* and all other federal caselaw interpreting prior express consent under the TCPA is now invalid in the wake of the Supreme Court's overturning of *Chevron* deference. (*See* Response at 15–16.) This argument fails. Defendant cites neither law nor logic indicating that, in the absence of *Chevron* deference, any federal court would reach a conclusion divergent from that of the FCC's 2015 Declaratory Ruling and Order that affirmed the effectiveness of oral, unilateral revocations of consent. The case relied upon by Defendant involves a judicial rejection of two FCC statutory interpretations that concern issues entirely unrelated to the case at bar. (*See* Response at 16 (citing *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, 307–08 (11th Cir. 2025) (rejecting an FCC rule that "prior express consent" means "prior express *written* consent" where telemarketing or tele-advertising robocalls are at issue and further rejecting another FCC rule that consumers may only consent to such calls in one-on-one communications whose subject matter tracks the subject matter of the interaction that initiated the consent).)

individual issues predominate."); Response at 19 ("Additionally, superiority is not met where there exists a split governing the key legal issue (i.e., unilateral revocation).").) As Defendant's superiority argument is indistinguishable from its predominance argument, the Court simply reiterates its predominance analysis set forth above and rejects Defendant's superiority argument on the same grounds.

### C. Numerosity

Defendant objects to numerosity under Rule 23(a)(1) in part on the same bases identified above but in part on a separate basis. As noted, Plaintiff's proposed class consists of ninety-two cell-phone numbers. According to Plaintiff, her expert constructed this class based on document disclosures from Defendant that treated loan accounts monolithically. (*See* Reply at 15–16.) Plaintiff avers that Defendant's evidentiary disclosures indicate that its practice was to associate do-not-call requests with entire loan accounts, not with individual phone numbers (which practice is relevant in the event that a loan account is associated with multiple phone numbers). (*See* Reply at 15–16.) Defendant now contends that it keeps a separate list of do-not-call requests on a number-by-number basis and that Plaintiff's class is poorly constructed because it fails to account for loan accounts that have more than one associated phone number. (*See* Response at 20.) Defendant argues that Plaintiff's proposed class may have erroneously counted certain cell-phone numbers as being subject to a do-not-call request when in fact the loan holder had only issued a do-not-call request with respect to one phone number, but not another cell-phone number associated with the same loan account. (*See* Response at 20.) The upshot of this argument is that, if enough of the cell-phone numbers in Plaintiff's proposed class were included only because they are associated with a multi-phone-number account for which there is a single do-not-call request, then Plaintiff's proposed class may not contain sufficient members to achieve numerosity, which federal courts tend to ballpark at forty members. (*See* Response at 20.)

The record contains insufficient information for the Court to adjudicate this dispute. Presumably, Defendant could simply tell the Court how many members would fall within

a class constructed along the lines identified in its Response brief, as Defendant possesses all the requisite information to conclusively resolve this issue. Defendant has not done so. Thus, the Court is left with Plaintiff's assertion that there are ninety-two cell-phone numbers in her class. The Court will not hold that that class falls short of the numerosity threshold based upon the amorphous and unsubstantiated argument that Defendant has submitted. Moreover, to the extent that Defendant's argument is meritorious, it appears that Plaintiff has raised the prospect that the argument is waived or otherwise invalid due to disclosure violations. (*See* Reply at 15; *see also* Reply at 2 & n.2 ("Throughout discovery, Defendant claimed it did not have an internal do-not-call list identifying specific telephone numbers dispositioned as 'do not call.' . . . Now, and in direct conflict with earlier testimony, Defendant seems to claim that it *does* record do-not-call requests on a telephone number-by-telephone number basis. . . . But, Defendant never produced any such list or records that would remotely support this new assertion. Either Defendant withheld evidence or [Defendant's deponent] perjured himself in his later declaration.").) With respect to this particular issue, there seems to be a lot going on behind the scenes. The Court will not attempt to settle a dispute that has not been squarely presented to it. At this juncture, the Court will simply find that Plaintiff has established a *prima facie* showing of numerosity. If Defendant possesses evidence or argumentation demonstrating the absence of numerosity, Defendant can offer it to the Court in a straightforward manner at a later juncture. The Court will postpone until that time an assessment of the misconduct alleged by Plaintiff.

### D.    Commonality

Finally, Defendant contests the presence of commonality under Rule 23(a)(2). Defendant's objection is predicated on the same arguments presented with respect to predominance, as well as an additional argument resting on the Supreme Court's opinion in *Wal-Mart Stores, Inc. v. Dukes*. (*See* Response at 21–22.) This additional argument is unavailing.

. . .

In *Wal-Mart*, the Supreme Court explained as follows.

Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law. Title VII, for example, can be violated in many ways—by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company. Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

. . . .

In this case, proof of commonality necessarily overlaps with respondents' merits contention that Wal–Mart engages in a *pattern or practice* of discrimination. That is so because, in resolving an individual's Title VII claim, the crux of the inquiry is the reason for a particular employment decision. Here respondents wish to sue about literally millions of employment decisions at once. Without some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*.

. . . .

The only corporate policy that the plaintiffs' evidence convincingly establishes is Wal–Mart's "policy" of *allowing discretion* by local supervisors over employment matters. On its face, of course, that is just the opposite of a uniform employment practice that would provide the commonality needed for a class action; it is a policy *against having* uniform employment practices.

. . . .

Because respondents provide no convincing proof of a companywide discriminatory pay and promotion policy, we have concluded that they have not established the existence of any common question.

564 U.S. at 349–59 (internal citation and quotation marks omitted) (emphases in original).

Defendant's commonality argument fails because here, unlike in *Wal-Mart*, Plaintiff's claim clearly rests upon a policy that is common to all class members. As

Plaintiff states in the introduction to her complaint, this case is fundamentally about Defendant's allegedly illegal policy to deliberately dishonor oral revocations of consent. (*See* Doc. 1 ¶¶ 3–5.) Plaintiff's complaint unquestionably meets Rule 23(a)(2)'s commonality requirement, as the allegedly illegal policy undergirding this class action is *precisely* the type of "pattern or practice" or "corporate policy" that the Supreme Court held in *Wal-Mart* satisfies the commonality criterion.

**IV.     Conclusion**

The Court finds this action appropriate for class certification. Perceiving no reason why the Weitz Firm and the Law Office of Chris R. Miltenberger should not be appointed class counsel, the Court also finds Plaintiff's class-counsel request appropriate.

**IT IS THEREFORE ORDERED** granting Plaintiff's Motion for Class Certification and Appointment of Class Counsel (Doc. 51).

**IT IS FURTHER ORDERED** certifying the following class under Rule 23:

All persons throughout the United States or its territories (1) to whom Defendant placed, or caused to be placed, a call, (2) directed to a number assigned to a cellular telephone service, (3) in connection with which Defendant used an artificial or prerecorded voice, (4) after the called party requested that Defendant stop placing telephone calls using an artificial or prerecorded voice to their cellular telephone, as recorded in Defendant's business records, (5) from four years prior to the filing of the Complaint through the date of class certification.

**IT IS FURTHER ORDERED** appointing Natasha Hiller as the class representative and appointing The Weitz Firm, LLC and The Law Office of Chris R. Miltenberger, PLLC as Class Counsel.

Dated this 7th day of May, 2025.

_____
Honorable John J. Tuchi
United States District Judge